IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| COURTNEY T.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:21-cv-00024 |
| | ) |
| KILOLO KIJAKAZI[2] | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Courtney T. ("Courtney") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381-1383f. Courtney argues that the Administrative Law Judge ("ALJ") erred by failing to properly (1) determine his physical residual functional capacity ("RFC") including his severe impairment of obesity and (2) assess his allegations regarding his symptoms. I conclude that the ALJ's decision is supported by substantial evidence. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 18) and **DENYING** Courtney's Motion for Summary Judgment (Dkt. 15).

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Courtney failed to demonstrate that he was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Courtney filed for SSI on May 3, 2018, alleging disability beginning on July 1, 2017, due to left knee replacement, arthritis, carpal tunnel in the right hand, high blood pressure, sleep apnea, gall bladder removed, hernia, and asthma. R. 10, 262. The state agency denied Courtney's application at the initial level of administrative review on September 14, 2018, and at the reconsideration level of review in December 2018. R. 113–122, 125–136. The relevant period for

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

Courtney's SSI claim is from his May 3, 2018 application date through the ALJ's decision on July 7, 2020. See 20 C.F.R. § 416.202 (explaining that a claimant is not eligible for SSI until, among other factors, the date he files an application for SSI benefits); 20 C.F.R. § 416.501 (stating that a claimant may not be paid SSI for any period that precedes the first month he satisfies the eligibility requirements, which cannot pre-date the date on which an application was filed). On June 23, 2020, ALJ Robert Ryan held a hearing to consider Courtney's claim. R. 62–91. Counsel represented Courtney at the hearing, which included testimony from vocational expert Gary Young. Id. On July 7, 2020, the ALJ entered his decision analyzing Courtney's claim under the familiar five-step process[4] and denying his claim for SSI benefits. R. 10–22.

The ALJ found that Courtney had not engaged in substantial gainful activity since May 3, 2018, the application date.[5] R. 12. The ALJ determined that Courtney suffered from severe physical impairments of osteoarthritis and degenerative joint disease of his bilateral knees, morbid obesity, and asthma. R. 13. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 14.

The ALJ concluded that Courtney retained the RFC to perform sedentary work with certain limitations. R. 14–20. Courtney requires a cane to walk but can carry small objects in his free hand. Id. He is limited to no more than brief, occasional exposure to dust, dirt, fumes or

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the Claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[5] Courtney was 45 years old on the date the application was filed, which is a younger individual under the Act. R. 20.

other pulmonary irritants. Id. Further, due to his need to periodically stand and move around, Courtney would be off task up to a maximum of 15% of the workday. Id. The ALJ found that Courtney had no past relevant work, but that he could perform other jobs that exist in significant numbers in the national economy, such as an assembler, inspector, and office clerical worker. R. 20-21. Thus, the ALJ determined that Courtney was not disabled. R. 22. Courtney appealed the ALJ's decision, and the Appeals Council denied his request for review on November 24, 2020. R. 1–6.

## **ANALYSIS**

Courtney alleges that the ALJ failed to properly (1) determine his RFC finding including his obesity and (2) assess his allegations regarding his symptoms.

**A. Medical History**

1. Treatment History

On May 10, 2017, Courtney underwent left knee replacement surgery, performed by Michael Wolfe, M.D. R. 408–412. Subsequent x-rays in 2017 showed the surgery was successful. R. 384, 392. While Courtney consistently complained of "clicking" in his knee in 2018, various providers advised him that the clicking was normal. R. 375, 380, 685, 695. From November 2017 through March 2018, Courtney reported that he no longer had pain with the clicking in his left knee but noted some mild aching with too much walking. R. 374, 376, 381. Courtney did complain of left knee pain in May 2018, but Dr. Wolfe's knee examination was largely normal, x-rays showed no abnormalities, and Dr. Wolfe found that Courtney's left knee pain was due to overcompensation for his right knee. R. 526.

From March to July 2019, Courtney attended eighteen physical therapy sessions for left knee pain and unsteadiness. R. 614. Despite his complaints of knee pain, Diane Cook, PT noted

that Courtney met some of his physical therapy goals and was discharged with a good prognosis. R. 617. Again, while Courtney complained of knee pain when bearing weight, he reported only minimal aching during rest – such as 1/10 pain level. R. 614, 620, 622, 625. In April and June 2019, the physical therapists questioned whether Courtney was complying with his home exercises program (R. 635, 659), though Courtney reported in August 2019 that he had been compliant with the physical therapy course (R. 685). Courtney reported increased activity level, but complained of pain during activity, as well as at rest, with relief from stretching out the leg. R. 685. Robyn Hakanson, M.D. found that Courtney had no pain with normal range of motion and only mild abnormalities. R. 686.

Throughout the relevant period, x-rays of Courtney's right knee revealed osteoarthritis. R. 471, 526, 528. On February 6, 2018, Courtney discussed a right knee replacement with Chidinma Osineme, M.D. However, Dr. Osineme advised Courtney he needed to lose weight before he could be a candidate for surgery, which he had failed to do by the October 2018 visit. R. 376, 542. At his May and November 2018 visits, Courtney's right knee showed moderate symptoms and during his August 2019 visit Courtney only complained about his left knee and did not have this right knee examined. R. 526, 686, 694. There are no records of treatment for either of Courtney's knees after August 2019, and Courtney testified in June 2020 that he had not received treatment for his right knee in the past year. R. 69.

2. Medical Opinion Evidence

In September 2018, after reviewing the evidence of record, state agency consultant Richard Surrusco, M.D. found that Courtney could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for two hours and sit for six hours in an eight-hour

workday; with limited use of right foot controls; could never climb ladders, ropes, or scaffolds; could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and must avoid concentrated exposure to extreme cold, wetness, and hazards such as machinery and heights. R. 119–121. Dr. Surrusco explained that Courtney's functional limitations stemmed from his knee impairments and obesity. Id. Similarly, on December 11, 2018, after reviewing the evidence of record, state agency medical consultant R.S. Kadian, M.D. agreed with Dr. Surrusco's findings. R. 130–134. The ALJ found this the state agency doctors' opinions partially persuasive as they were consistent with evidence on the record as a whole, but the ALJ further limited Courtney to sedentary work due to his testimony and other evidence on the record. R. 20.

### B.  RFC Finding and Obesity Severe Impairment

Courtney argues that the ALJ's RFC decision is not supported by substantial evidence and should be rejected as insufficient. Pl.'s Br. at 16–17, Dkt. 16. Specifically, he asserts that the ALJ failed to "conduct a function-by-function analysis and failed to make any specific findings regarding [Courtney's] ability to sustain work activity over an eight-hour workday or [his] rate of absenteeism," which he argues led to the ALJ's failure to present proper hypotheticals to the vocational expert. Id. Further, Courtney argues that the ALJ merely stated that he considered SSR 19-2, but fails to actually show how he considered obesity in relation to Courtney's other severe impairments as well as the effect of obesity on the RFC. Pl.'s Br. at 11–16, Dkt. 18. However, the evidence cited by Courtney was not ignored by the ALJ, and his argument amounts to a disagreement with the ALJ's RFC determination.

A function-by-function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions

6

reached and explain any record evidence which contradicts the RFC determination. See Social Security Ruling (SSR) 96-8p, 1996 WL 374184; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weightlifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here, the ALJ's RFC findings are supported by substantial evidence. The ALJ's decision includes the narrative discussion required by SSR 96-8p and contains sufficient information to allow meaningful review. R. 14–20. Unlike the ALJ in Mascio, the ALJ in this case considered conflicting medical evidence and is "not left to guess about how the ALJ arrived at his conclusions." The ALJ's findings include a comprehensive analysis of Courtney's medical

7

records regarding his severe physical impairments of osteoarthritis and degenerative joint disease of his bilateral knees, morbid obesity, and asthma, the medical opinions, his hearing testimony, and the ALJ's conclusions. Id.

Courtney generally argues that the ALJ failed to perform a function-by-function analysis and never made specific findings regarding whether his impairments would result in the inability to sustain work activity in an eight-hour workday or absences from work. However, the ALJ provided a sufficient explanation of Courtney's impairments and how these impairments impacted his ability to work. The ALJ considered his knee impairment and found that Courtney's allegations were not persuasive because there was no indication that his self-reported limitation to elevate his legs was medically advised. R. 19. The ALJ explained that even if Courtney needed to elevate his legs, it would not preclude work because he could maintain his work schedule by elevating his legs before or after work, or during scheduled breaks. Id. The ALJ considered Courtney's testimony that he needed to switch positions periodically when sitting (R. 15, 74), described his medical treatment evidence (R. 16–18), and noted that "due to the need to periodically stand and move around" Courtney would be off task up to a maximum of 15% (R. 14). The ALJ considered Courtney's daily activities that he can prepare meals and drive short distances. R. 15. Thus, the ALJ created a logical bridge from the evidence to the RFC determination and properly assessed his impairments through a function-by-function analysis.

Regarding Courtney's obesity, the ALJ properly reviewed the record and assessed the impact of Courtney's obesity on his RFC. The ALJ noted that Courtney's obesity was severe because it worsened his symptoms in combination with his other impairments. R. 13. The ALJ found morbid obesity to be a severe physical impairment at step two and discussed obesity pursuant to SSR 19-2p at step three of the sequential evaluation process. R. 13. Also, in step

three, the ALJ accounted for Courtney's obesity stating that his "severe and non-severe impairments, including obesity, have been considered and accounted for in the above [RFC]." R. 19. The ALJ acknowledged that Courtney's obesity compounded his knee issues (R. 13), explaining that the combination of osteoarthritis and obesity restricted Courtney's ability to stand or walk for prolonged periods of time. R. 19. The ALJ wrote that "obesity and arthritis affecting a weight-bearing joint may [cause] more pain and limitation than might be expected from arthritis alone," and explained that he took this into consideration throughout his RFC decision. R. 14. The ALJ included the use of a cane in his RFC to accommodate these issues. R. 14, 19. Courtney's fails to identify medical evidence on the record beyond his own testimony of knee pain (R. 71, 73–75) to support his conclusion that his obesity makes sitting more difficult and that he needs to raise his legs, all of which the ALJ considered. R. 19; Pl.'s Br. at 15, Dkt. 16. Thus, the ALJ properly assessed and explained Courtney's obesity in determining the RFC decision.

The role of this court is not to reweigh the evidence, as Courtney urges, or substitute its judgment for that of the ALJ, but instead determine whether the ALJ's decision is supported by substantial evidence. See Sullivan, 907 F.2d at 1456. The ALJ adequately explained how he arrived at Courtney's RFC findings and provided an accurate and logical bridge between the evidence and the findings as required in SSR 96-8p. Accordingly, I recommend finding that substantial evidence supports the ALJ's RFC determination.

### C. Subjective Allegations

Courtney asserts that the ALJ's decision regarding his allegations is not supported by substantial evidence. Pl.'s Br. at 18–23, Dkt. 16. Courtney contends that his pain complaints were not fully accepted and the ALJ failed to "build a logical bridge between the evidence and

9

his findings." Id. at 23. However, Courtney does not identify any subjective complaints or treatment records that the ALJ failed to consider, nor does Courtney identify specific instances where the ALJ improperly applied the legal standards. Rather, Courtney asks this court to re-evaluate his subjective allegations and come to a different conclusion from that of the ALJ. That is not the province of this court.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). At this step, objective evidence is not required to find the claimant disabled.  Thus, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

A reviewing court gives great weight to the ALJ's assessment of a claimant's statements and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions.  See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984).  Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based

on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 Fed. Appx. 65, 68 (D. Md. May 4, 2016) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

Here, the ALJ's opinion includes a detailed discussion of Courtney's medical history, including Courtney's allegations, and the ALJ adequately supported his findings that Courtney's allegations concerning the intensity, persistence, and limiting effects of his alleged symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 15–16. Specifically, the ALJ noted that Courtney required a cane to walk due to his osteoarthritis in both knees which the ALJ found was consistent with the record, and the ALJ included in the RFC. R. 19. Likewise, the ALJ accepted Courtney's complaint that he could not stand or walk for prolonged periods of time, finding it consistent with the objective medical evidence regarding his knee and obesity impairments. Id. Despite not finding Courtney's allegations regarding sitting entirely persuasive, the ALJ accommodated the allegation by finding that Courtney needed to change position periodically and would be off task a maximum of 15% of the work day. R. 14. However, the ALJ did not find Courtney's allegation that he could sit for only fifteen minutes at a time and needed to elevate his legs two to three times a day for thirty minutes supported by the record. Likewise, the ALJ explained that the Third Party Function Report from Courtney's aunt, supporting his allegations, was not consistent with the record and thus not persuasive. R. 19–20, 300. Thus, the ALJ properly considered and assessed Courtney's subjective allegations with substantial evidence.

The ALJ's job is to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that substantial evidence supports

the ALJ's analysis of Courtney's subjective complaints with substantial evidence and that Courtney is capable of performing work at the level stated in the ALJ's opinion.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** entering an order **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** Courtney's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: March 7, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge